**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **EDUARDO SANCHEZ,** | § | |
| **TDCJ No. 00873766,** | § | |
| Petitioner, | § | |
| | § | |
| v. | § | EP-21-CV-308-KC |
| | § | |
| **BOBBY LUMPKIN,** | § | |
| **Director, Texas Department of** | § | |
| **Criminal Justice, Correctional** | § | |
| **Institutions Division,** | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner Juan Antonio Sanchez asks the Court to order DNA testing on his shoes pursuant to Chapter 64 of the Texas Code of Criminal Procedure to prove his innocence. Pet'r's Pet. 19, ECF No. 1-1. His petition is denied for the following reasons.

## BACKGROUND AND PROCEDURAL HISTORY

Sanchez attended a party in Horizon City, Texas, with Osvaldo Vargas Jr. and others on October 20, 1997. Sanchez v. State, No. 08-20-00179-CR, 2021 WL 2453189, at *1 (Tex. App. June 16, 2021). Sanchez and Vargas left the party together to buy more beer. Id. "On the way to the store, [Sanchez] asked Vargas '[d]o you want to kill me?' Vargas said '[y]eah' and punched the back of [Sanchez's] head." Id. In response, Sanchez shot Vargas three times "using a sawn off .22-caliber rifle." Id. After the shooting, he returned to the party and was observed wearing "pants, shirt, and black Puma shoes . . . covered in blood." Id. He changed his clothes and returned to the scene of his crime to hide Vargas's body and destroy his blood-stained clothing. Id. He found Vargas was still alive and placed a plastic bag over his head to suffocate him. Id. He returned to the party after Vargas died. Id.

Law enforcement officers discovered lifeless Vargas' body in the desert. Id. They also

found "two .22-caliber projectiles, a live .22-caliber round, a .22-caliber casing, a sawed-off stock from a rifle, several pairs of jeans, several shirts, a pair of overalls, five pairs of shoes, a San Francisco Forty-Niners poncho, and a Dallas Cowboys jacket." Id. They learned witnesses had previously seen Sanchez with the rifle and a Forty-Niners poncho. Id. They tested the bloody clothing—including the Forty-Niners poncho—and determined the DNA on it was consistent with "Vargas' DQ Alpha subtype." Id. Based on this information, they searched Sanchez's home and discovered, among other things, a pair of black Puma shoes. Id. at 2. They determined the sole pattern on the shoes matched footprints they discovered near Vargas' body. Id. They tested the shoes, but the tests did not show blood was present. Id.

Sanchez was interviewed by the law enforcement officers and he provided a written statement. Id. He admitted he shot Vargas. Id. He claimed he returned to the party after the shooting, changed his clothes, and returned to the scene with his bloody clothes to destroy the evidence. Id. He also admitted he placed the plastic bag over Vargas' head to suffocate him. Id.

Sanchez was indicted for murder, pursuant to Texas Penal Code § 10.02(A)(1), in cause number 970D11378 in the 243rd District Court of El Paso County, Texas. Id. He was found guilty by a jury and sentenced to 50 years' imprisonment. Id.

On January 28, 2020, Sanchez filed a motion for DNA testing under Chapter 64 of the Texas Code of Criminal Procedure. Id. He explained he wanted to have the black Puma shoes found at his residence tested to prove his innocence. Id.

The trial court denied Sanchez's motion. Id. It explained Sanchez failed to demonstrate an entitlement to DNA testing under Chapter 64. Id. Specifically, it said Sanchez failed to demonstrate (1) the Puma shoes had a reasonable likelihood of containing biological material, and

(2) he would not have been convicted if exculpatory results had been obtained through DNA testing of the Puma shoes. Id.

The Eighth Court of Appeals affirmed the lower court's decision to deny Sanchez's motion for post-conviction DNA testing. Id. at 4.

Sanchez now claims the Texas courts violated his rights when they denied his motion for DNA testing. Pet'r's Pet. 5, ECF No. 1-1. He asks the Court to order DNA testing on the Puma shoes. Id. at 19.

## APPLICABLE LAW

"[C]ollateral review is different from direct review," and the writ of habeas corpus is "an extraordinary remedy," reserved for those petitioners whom "society has grievously wronged." Brecht v. Abrahamson, 507 U.S. 619, 633–34 (1993). It "is designed to guard against extreme malfunctions in the state criminal justice system." Id. (citing Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring)). It is granted pursuant to 28 U.S.C. § 2254 only where a state prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Preiser v. Rodriguez, 411 U.S. 475, 484–87 (1973).

Furthermore, "federal courts do not sit as courts of appeal and error for state court convictions." Dillard v. Blackburn, 780 F.2d 509, 513 (5th Cir. 1986). They may only grant habeas relief, pursuant to 28 U.S.C. § 2254, when a petitioner successfully raises a federal issue. Orellana v. Kyle, 65 F.3d 29, 31 (5th Cir. 1995). They may not grant federal habeas relief to a state prisoner to correct errors of state constitutional, statutory, or procedural law. Estelle v. McGuire, 502 U.S. 62, 67–68 (1991); West v. Johnson, 92 F.3d 1385, 1404 (5th Cir. 1996). They must also defer to state court decisions on the merits. Moore v. Cockrell, 313 F.3d 880, 881 (5th

Cir. 2002). And they must accept to state court decisions on procedural grounds. Coleman v. Thompson, 501 U.S. 722, 729–30 (1991); Muniz v. Johnson, 132 F.3d 214, 220 (5th Cir. 1998).

## ANALYSIS

A prisoner does not have a freestanding federal constitutional right to obtain post-conviction DNA testing. Dist. Attorney's Off. for Third Jud. Dist. v. Osborne, 557 U.S. 52, 72 (2009). A prisoner may, however, have such a right under a state's constitution or laws. Id. at 69.

In Texas, a prisoner has a statutory right to move for post-conviction forensic DNA testing of evidence containing biological material pursuant to Chapter 64 of the Texas Code of Criminal Procedure. Tex. Code Crim. P. Ann. art. 64.01; Elam v. Lykos, 470 F. App'x 275, 276 (5th Cir. 2012). But he may obtain an order for forensic DNA testing "only" if the court finds (1) the evidence still exists and is in a condition that makes DNA testing possible, (2) has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect, and (3) identity was an issue in the case. Tex. Code Crim. P. Ann. art. 64.03(a)(1)(A), (B), (C).

A federal habeas court is limited to addressing a claim that a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States"—not in violation of state laws. 28 U.S.C. § 2254(a). Moreover, "[s]uccess in [a] suit for DNA testing would not 'necessarily imply' the invalidity of [a] conviction. While test results might prove exculpatory, that outcome is hardly inevitable; . . . results might prove inconclusive or they might further incriminate" the petition. Skinner v. Switzer, 562 U.S. 521, 534 (2011).

Accordingly, the Court finds Sanchez is not entitled to § 2254 relief on his claim that the

state courts erred in denying him DNA testing on his Puma shoes—or that the Court should order DNA testing on the shoes.

## EVIDENTIARY HEARING

A federal court's review of claims previously adjudicated on the merits by a state court "is limited to the record that was before the state court." Cullen v. Pinholster, 563 U.S. 170, 185–86 (2011); Blue *v.* Thaler, 665 F.3d 647, 656 (5th Cir. 2011). A federal court will hold an evidentiary hearing on claims not developed in State court proceedings only if the petitioner shows that (1) a claim relies on a new, retroactive rule of constitutional law that was previously unavailable, (2) a claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, or (3) the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable juror would have convicted the petitioner. 28 U.S.C. § 2254(e)(2).

Sanchez's petition asserts a claim already addressed—and rejected—by state courts. Sanchez, 2021 WL 2453189, at *4. He does not now rely on a new rule of federal constitutional law or new evidence. He is not entitled to an evidentiary hearing.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Gonzalez v. Thaler, 132 S. Ct. 641, 646 (2012). In cases where a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the petitioner must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of

5

reason would find it debatable whether the district court was correct in its procedural ruling." Id.

Reasonable jurists could not debate the denial of Sanchez's § 2254 petition for substantive or procedural reasons—or find that his issue deserves encouragement to proceed.  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack, 529 U.S. at 484). Therefore, the Court shall not issue a certificate of appealability.

## CONCLUSIONS AND ORDERS

The Court concludes that Sanchez is not entitled to § 2254 relief on his claim. The Court further concludes that Sanchez is not entitled to a certificate of appealability. The Court, therefore, enters the following orders:

**IT IS ORDERED** that Sanchez's pro se "Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody" (ECF No. 1-1) is **DENIED**, and his civil cause is **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Sanchez is **DENIED** a certificate of appealability.

**IT IS FURTHER ORDERED** that all pending motions are **DENIED**.

**IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE** this case.

**SIGNED this 28th day of December, 2021.**

_____
**KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE**